IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcos A. Madril, | No. CV-14-01566-TUC-RCC (EJM) |
| Plaintiff, | **REPORT AND** |
| v. | **RECOMMENDATION** |
| Wells Fargo Advisors, LLC, | |
| Defendant. | |

Before the Court are Plaintiff Marcos A. Madril's Motion to Vacate the Arbitrators Award or Modify the Decision (Doc. 21) and Defendant Wells Fargo Advisors, LLC's ("Wells Fargo") Petition to Confirm Arbitration Award and Enter Judgment Thereon (Doc. 22).

The underlying dispute that resulted in arbitration stems from Mr. Madril's failure to repay a promissory note. Pursuant to the parties' agreement to arbitrate disputes, Wells Fargo filed an arbitration claim against Mr. Madril on January 23, 2013. Mr. Madril filed a counterclaim on March 25, 2013. An arbitration hearing was held before the Financial Industry Regulatory Authority ("FINRA") from November 19, 2013 to November 21, 2013. On January 7, 2014, the arbitrators issued an award in favor of Wells Fargo and against Mr. Madril in the total amount of $115,796.15.

Mr. Madril subsequently filed a motion to vacate the arbitrators' award, claiming (1) FINRA exceeded its powers and authority; (2) the arbitrators engaged in misconduct by failing to grant Mr. Madril's motion to continue; and (3) the arbitrators engaged in misbehavior by being more concerned about their personal schedules than holding a fair hearing. (Doc. 21). Wells Fargo filed a memorandum in opposition to Mr. Madril's motion to vacate, asserting that (1) Mr. Madril submitted to FINRA's jurisdiction; (2) the arbitrators had several reasonable bases for denying Mr. Madril's motion to continue and the arbitrator's refusal to grant Mr. Madril a continuance did not prejudice Mr. Madril; and (3) the arbitrators' concern about their personal schedules did not prejudice Mr. Madril. (Doc. 26). Wells Fargo also filed a petition to confirm the arbitration award and enter judgment thereon and requests attorney's fees. (Doc. 22).

The motions have been fully briefed and oral arguments on the motion and petition were held on April, 14, 2015. For the reasons stated below, the Magistrate Judge recommends that Plaintiff's Motion to Vacate the Arbitrators' Award or Modify the Decision be denied. The undersigned also recommends that Defendant's Petition to Confirm Arbitration Award and Enter Judgment Thereon be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The circumstances surrounding this dispute began in September 2008 when Mr. Madril was recruited and hired to be a financial advisor for Wachovia Securities, LLC ("Wachovia") by Wachovia Vice-President, Shannon Smith. (Doc. 21 at 2). During the recruitment phase, Mr. Madril believed that he negotiated an employment agreement in which he would receive a $125,000 signing bonus, a guaranteed minimum 35% on financial commissions, and lucrative branch assignments with high level financial assets under his management in exchange for transferring his financial broker's license to Wachovia. *Id.* Mr. Madril signed an Offer Summary contract with Wachovia on September 18, 2008 and resigned from his current job at Chase Bank. *Id.*; (Doc. 31-2, Ex. 3 at 25). The Offer Summary contract included a section titled "Transitional Bonus," explaining that Mr. Madril would receive a transitional bonus of $125,000 to be paid in 88 monthly installments. (Doc. 31-2, Ex. 3 at 21-22). The contract further explained that

the transitional bonus was subject to additional terms and conditions, namely that continued payment of the bonus was conditioned on Mr. Madril's active employment with Wachovia and would terminate if Mr. Madril ended his employment with Wachovia. *Id*. at 23. The additional terms and conditions also stated that:

> In the event you are in default under the terms of any promissory note or other obligations to Wachovia Securities at the time any Bonus payments become due hereunder, then Wachovia Securities shall automatically apply those Bonus payments to the payment of the amounts in which you are default under such note or other obligation.

*Id*.

On September 25, 2008, Wachovia presented Mr. Madril with a Promissory Note, which he signed the same day. (Doc. 31-2, Ex. 4). The Promissory Note specified that Mr. Madril promised to pay Wachovia or its successors and assigns the principal sum of $125,000 with interest thereon at a rate of 4% per annum. (Doc. 31-2, Ex. 4 at 27). Nevertheless, Mr. Madril claims that the Promissory Note turned what he believed to be a signing bonus into a repayable loan.[1] (Doc. 21 at 3). The Promissory Note further stated that if Mr. Madril terminated his employment with Wachovia it would constitute a default on the note. (Doc. 31-2, Ex. 4 at 27).

Mr. Madril resigned from Wells Fargo[2] on January 3, 2012 and refused to repay the promissory note. (Doc. 21 at 5).

**A. Arbitration**

On January 23, 2013, pursuant to the arbitration clauses contained in the Offer Summary contract and the Promissory Note,[3] Wells Fargo filed an arbitration claim

---

[1] At oral arguments, Wells Fargo explained that the promissory note was a forgivable note: [Mr. Madril] receives a bonus each month for the same amount as what is required to pay off that loan. And that's basically a forgivable note, and it's forgiven by the payment of a bonus that pays off the note." (Doc. 36 at 47).

[2] Wachovia changed its name to Wells Fargo Advisors, LLC on May 1, 2009.

[3] The Offer Summary contract states, in relevant part:

> You [referring to Mr. Madril] agree that any action instituted as a result of any controversy arising out of

- 3 -

before FINRA.[4] (Doc. 21, Ex. 1). Wells Fargo alleged that, upon Mr. Madril's resignation from Wells Fargo, Mr. Madril was required to repay the balance of the Promissory Note and failed to do so. (Doc. 26 at 8).

Mr. Madril filed an answer to Wells Fargo's claim and a counterclaim on March 25, 2013. (Doc. 21-1, Ex. 30 at 176 (CM/ECF 32)). Prior to filing his response and counterclaim, Mr. Madril signed FINRA's Submission Agreement. (Doc. 31-3, Ex. 5). The agreement stated, in relevant part:

> 1. The undersigned parties (parties') hereby submit the present matter in controversy…to arbitration in accordance with the FINRA By-laws, Rules, and Code of Arbitration Procedure.
>
> 2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

*Id.* at 2.

On June 3, 2013, a telephonic pre-hearing conference was held to schedule the arbitration hearing. (Doc. 26 at 8). Although Mr. Madril was notified of the date and time

---

> this Offer Summary and/or the interpretation thereof, or your employment or termination of your employment, shall be brought before the arbitration facility of the National Association of Securities Dealers to the exclusion of all others, unless the rules and/or codes of the NASD provide otherwise….Judgment upon any award rendered by an arbitration panel may be entered in any state or federal court of competent jurisdiction.

(Doc. 31-2, Ex. 3 at 25).

The Promissory Note states that Wachovia (now Wells Fargo) and Mr. Madril "agree that any action instituted as a result of any controversy arising out of [the] Note…shall be brought before the National Association of Securities Dealers [NASD] to the exclusion of all others….Judgment upon any award rendered by an arbitration panel may be entered in any state or federal court of competent jurisdiction." (Doc. 31-2, Ex. 4 at 28).

[4] On July 30, 2007, NASD and the member regulation, enforcement and arbitration operations of the New York Stock Exchange ("NYSE") were consolidated to create FINRA. (Doc. 31-2, Ex. 1 at 2).

of the telephonic hearing and did not object, Mr. Madril did not participate in the telephonic conference. *Id.* On June 10, 2013, FINRA notified Mr. Madril and Wells Fargo that the arbitration hearing was scheduled for November 19, 2013 to November 21, 2013. *Id.*

On June 7, 2013, Mr. Madril filed his first request for production of documents. (Doc. 21, Ex. 2).[5] On August 1, 2013, Wells Fargo requested a two week extension to respond to Mr. Madril's discovery request, which Mr. Madril did not oppose. (Doc. 21, Ex. 3). Wells Fargo served its responses to Mr. Madril's discovery requests and a CD containing 479 pages of documents on August 26, 2013. (Doc. 31-3, Ex. 7 at 13).[6]

On October 2, 2013, Mr. Madril filed a motion to compel discovery and for sanctions, claiming he never received the requested discovery. (Doc. 36 at 8-9).[7] FINRA transmitted Mr. Madril's motion to compel discovery and for sanctions to Wells Fargo on October 7, 2013. *Id.* at 36. On October 17, 2013, Wells Fargo filed its response to Mr. Madril's motion to compel discovery and for sanctions, claiming that it was unclear what documents Mr. Madril sought that he had not already received. (Doc. 21-1, Ex. 33 at 212 (CM/ECF 68)). That same day, Wells Fargo contacted Mr. Madril via email to notify Mr. Madril that it would be willing to meet and confer with Mr. Madril to discuss his discovery requests. (Doc. 31-3, Ex. 10 at 44). According to Wells Fargo, Mr. Madril never responded. (Doc. 36 at 37).

On October 22, 2013, Mr. Madril filed a reply to Wells Fargo's response to Mr. Madril's motion, claiming he never received any documents. (Doc. 31-3, Ex. 11 at 47).

---

[5] Wells Fargo noted that, pursuant to FINRA rules, Mr. Madril could have requested disclosure as early as February 18, 2013, 45 days after the arbitration claim was served. (Doc. 26 at 8; Doc. 36 at 34).

[6] Wells Fargo's responses consist of a cover letter and Wells Fargo's objections to certain discovery requests.

[7] According to Wells Fargo, Mr. Madril later clarified that he received the package but it only contained the cover letter and response to Mr. Madril's discovery requests— not the CD containing the 479 pages of documents. (Doc. 36 at 35). The cover letter stated that enclosed were Wells Fargo's responses and bates-labeled documents. (Doc. 31-3, Ex. 7 at 13). Wells Fargo also notes that Mr. Madril made no efforts to follow up or meet and confer regarding the alleged missing CD, but instead waited until October 2, 2013 to file his motion to compel. (Doc. 36 at 35-36).

Upon reading the reply, Wells Fargo contacted Mr. Madril to confirm that Mr. Madril was claiming he never received the 479 pages of documents. (Doc. 36 at 37). The following day, October 23, 2013, Wells Fargo mailed another CD containing the 479 pages of documents to Mr. Madril's residence. (Doc. 21, Ex. 10 at 64 (CM/ECF 61)). Mr. Madril notified Wells Fargo that he was unable to open the CD and on October 24, 2013, Wells Fargo provided Mr. Madril with another CD containing the 479 pages of documents. (Doc. 36 at 9).

On October 31, 2013, Wells Fargo again contacted Mr. Madril via email to notify Mr. Madril that it would be willing to discuss any additional discovery requests, (Doc. 31-4, Ex. 12 at 2), but Mr. Madril never responded (Doc. 31-1, Ex. A at 9). That same day, Wells Fargo also submitted a declaration made by Erica Candela, the Legal Administrative Assistant for Wells Fargo's prior managing counsel, Beverley Slaughter. (Doc. 31-3, Ex. 8). Ms. Candela declared, under the penalty of perjury, that she served Wells Fargo's response to Mr. Madril's First Request for Production and the accompanying documents via Federal Express on August 26, 2013. *Id.* at 30. In support of her declaration, Ms. Candela submitted a printout from the Federal Express website which shows that the package was left at the front door of Mr. Madril's residence on August 27, 2013. *Id.* at 36.

On November 1, 2013, the FINRA arbitration panel held a telephonic hearing on Mr. Madril's motion to compel discovery and for sanctions. (Doc. 31-4, Ex. 13 at 6). At the November 1 hearing, Mr. Madril requested a continuance of the arbitration hearing scheduled for November 19, 2013 and Wells Fargo objected. (Doc. 36 at 27). The panel denied the request for a continuance and ruled that Mr. Madril and Wells Fargo's attorney, Kevin Woods, were to meet on November 4, 2013 to discuss and attempt to resolve all open discovery request issues. (Doc. 31-4, Ex. 13 at 6). The panel also ruled that the request for sanctions would be deferred until the evidentiary hearing. *Id.*

At the November 4 meeting, Mr. Woods and Mr. Madril spent approximately one and a half hours going through the various discovery requests. (Doc. 36 at 38). Mr. Woods indicated that many of the documents Mr. Madril was requesting had already

- 6 -

been produced. (Doc. 21, Ex. 13). Of the documents that had not been produced, which primarily included emails, policy manuals,[8] and guidelines or directives, Mr. Woods indicated that he would produce the documents in the next several days. *Id.* With respect to the other unproduced documents, Mr. Woods objected on the grounds that the requests were overly broad, unduly burdensome or irrelevant. *Id.* Mr. Woods also objected to many of the new requests Mr. Madril made on November 4 because the discovery deadline had passed. *Id.*

On November 5, Wells Fargo ordered an outside vendor to pull emails for Dan Lind, Mahes Prasad, Rick Burrows, Shannon Smith and Patty Presley, all regional branch managers and assistant managers or managers of Mr. Madril during the period he was employed by Wells Fargo. (Doc. 36 at 38). Due to the large number of emails recovered, Mr. Madril and Wells Fargo agreed upon narrowing the documents based on a set of search terms. *Id.* Ultimately, Wells Fargo produced approximately 300 to 350 pages of emails on November 13 and November 14.[9] (Doc. 21, Ex. 14 and 17).

In addition to the emails, Wells Fargo produced 300 to 350 pages of documents on a rolling basis from November 4 to November 19, 2013. (Doc. 36 at 39-40). These documents included 200 pages of policy manuals, guidelines and directives, and 100 to 115 pages of Wachovia and Wells Fargo's financial compensation plans. *Id.* at 40. Wells Fargo produced supervisory manual sections and financial compensation plans for 2008 to 2011 on November 7. (Doc. 21, Ex. 14).

On November 13, in addition to emails, Wells Fargo produced the Wachovia recruiting best practices document (Doc. 21, Ex. 17) and an article regarding key events in the financial crisis (Doc. 21, Ex. 19). On November 14, in addition to emails, Wells Fargo produced the 2008 Performance and Development Plan for Shannon Smith (Doc.

---

[8] Mr. Madril refused to go through the compliance manual indices to identify which portions were relevant to his discovery requests. Instead, Mr. Woods identified the relevant portions and produced them to Mr. Madril on November 5, 2013. (Doc. 36 at 40).

[9] Wells Fargo noted that many pages were attachments to emails not relevant to this dispute. (Doc. 36 at 39).

21, Ex. 21) and a list of the supervisors for Dan Lind, Mahes Prasad, Rick Burrows and Shannon Smith (Doc. 21, Ex. 22). The only document produced on November 19, the first day of the evidentiary hearing, was the three-page recruiting matrix. *Id.* at 49.

On November 12, 2013, Mr. Madril again filed a request for sanctions, claiming Wells Fargo had been uncooperative in providing discovery. (Doc. 21, Ex. 16 at 137 (CM/EFC 135)). Wells Fargo filed its opposition to Mr. Madril's request on November 19, 2013, the first day of the evidentiary hearing. (Doc. 31-4, Ex. 22 at 71). That same day, prior to the commencement of the evidentiary hearing, the panel held oral arguments on Mr. Madril's renewed request for sanctions. (Doc. 21-1, Ex. 33 at 198 (CM/ECF 54)). At the close of Mr. Madril's arguments, Mr. Madril requested "a continuance and opportunity to start fresh with…with some of the disclosure [he] now [had]." *Id.* at 209 (CM/ECF 65). In response, Wells Fargo provided the panel with a detailed rendition of the timing of the disclosure and the efforts Wells Fargo made to contact Mr. Madril. *Id.* at 210-219 (CM/ECF 66-75). One of the arbitrators stated:

> "Mr. Madril, you have again requested a continuance. Now, that is frustrating to me. You previously requested a continuance and the panel was clear that no continuance would be granted. What would be the purpose in granting a continuance? The ideal situation is to get this matter resolved…."

*Id.* at 220 (CM/ECF 76).

As to Mr. Madril's renewed request for sanctions, the panel deferred their decision until after it heard the evidence presented during the evidentiary hearing so that it could determine if and how Mr. Madril had been prejudiced by Wells Fargo's failure to provide discovery. *Id.* at 221 (CM/ECF 77). The panel ultimately denied Mr. Madril's renewed request for sanctions. (Doc. 21-1, Ex. 30 at 178 (CM/ECF 34)).

On November 19, 2013, after addressing the discovery issues but prior to the commencement of the evidentiary hearing, the panel addressed Mr. Madril's request for subpoenas for 12 individuals. (Doc. 21-1, Ex. 33 at 221 (CM/ECF 77)). The chairman of the panel expressed two issues with the subpoenas: (1) the subpoenas were requested the

Friday before the hearing and (2) the subpoenas referred to the reaches of persons. *Id.* Mr. Woods indicated that he would do his best to make many of the people Mr. Madril requested to be subpoenaed available.[10] *Id.* In response, the Chairman indicated that he would not issue any subpoenas unless it became apparent that somebody was reluctant to appear. *Id.* at 224 (CM/ECF 80).

During the arbitration hearing, Mr. Madril spent two and a half days presenting his case, and Wells Fargo spent the remaining half day presenting its case. (Doc. 26 at 18). The evidentiary hearing concluded on November 21, 2013. (Doc. 31-3, Ex. 6 at 5). On January 7, 2014, the panel issued an award in favor of Wells Fargo and against Madril in the total amount of $115,796.15, including $83,968.65 in compensatory damages and $31,827.50 in attorney's fees. (Doc. 21-1, Ex. 30 at 178 (CM/ECF 34)). The panel also denied Mr. Madril's counterclaim in its entirety. *Id.*

**B. Present Case**

On October 5, 2014, Mr. Madril filed a motion to vacate the arbitrators' award, claiming (1) FINRA exceeded its powers and authority; (2) the arbitrators engaged in misconduct by failing to grant Mr. Madril's motion to continue; and (3) the arbitrators engaged in misbehavior by being more concerned about their personal schedules than holding a fair hearing. (Doc. 21). Wells Fargo filed a memorandum in opposition to Mr. Madril's motion to vacate. (Doc. 26). Wells Fargo claims that (1) Mr. Madril submitted to FINRA's jurisdiction; (2) the arbitrators had several reasonable bases for denying Mr. Madril's motion to continue and the arbitrator's refusal to grant Mr. Madril a continuance did not prejudice Mr. Madril; and (3) the arbitrator's concern about their personal schedules did not prejudice Mr. Madril. *Id.* Wells Fargo also filed a petition to confirm the arbitration award and enter judgment thereon and requests attorney's fees. (Doc. 22).

**II. LEGAL STANDARD**

Unless an arbitration award is vacated, modified or corrected pursuant to the

---

[10] Wells Fargo did contact Shannon Smith, Dan Lind and Brenda Bell and persuaded them to appear and testify on behalf of Mr. Madril. (Doc. 36 at 43-44). Wells Fargo also stated it had other witnesses lined up to testify for Mr. Madril but that he decided not to call them. *Id.* at 44.

Federal Arbitration Act, a court must confirm an arbitration award if: (1) the parties, in their agreement, have agreed that a judgment of the court can be entered upon the arbitration award; (2) the parties have specified the court that may enter judgment thereon; and (3) one of the parties applies for an order confirming the award within one year after the award is made. 9 U.S.C. §9; *Schoenduve Corp. v. Lucent Technologies. Inc.*, 442 F.3d 727, 731 (9th Cir. 2006); *see also Kyocera Corp. v. Prudential–Bache Trade Services, Inc.*, 341 F.3d 987 (9th Cir. 2003).

Upon the application of any party to the arbitration, the district court may enter an order vacating the arbitration award

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

The Court's "review of the arbitration panel's decision is greatly limited" as "arbitration is an encouraged method of dispute resolution." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1172 (9th Cir. 2010). Further, "in order to provide a relatively expeditious and inexpensive dispute resolution, arbitration is not governed by the federal courts' strict procedural and evidentiary requirements." *Id.* at 1173. The burden of establishing grounds for vacating an arbitration award is on the party seeking to vacate the award. *Id.*

…

…

### III. DISCUSSION
#### A. MOTION TO VACATE
##### 1. FINRA's Authority and Jurisdiction

Mr. Madril contends that the arbitration award should be vacated pursuant to 9 U.S.C. § 10(a)(3) because FINRA had neither the authority nor the jurisdiction to hear the matter. (Doc. 21 at 8). In support of his claim, Mr. Madril points out that the arbitration forum referenced in the arbitration clauses is NASD, not FINRA. (Doc. 21 at 10).

The Ninth Circuit has long recognized a rule that a party may not voluntarily participate in arbitration and then challenge the authority of the arbitrators. *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1357 (9th Cir. 1983); *see also Nghiem v. NEC Electronic, Inc.* 25 F. 3d. 1437 (9th Cir. 1994). *In Daniel*, the defendant sent a representative to arbitration who listened to the evidence, presented evidence himself and requested a continuance. 724 F.2d at 1357. Two weeks after the hearing, the defendant challenged the authority of the arbitration forum. *Id.* The arbitrator issued a decision against the defendant and he appealed, claiming that the arbitrator did not have authority to issue the decision. *Id.* In confirming the arbitration award, the Ninth Circuit held that "a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Id.*

In this case, like in *Daniel*, Mr. Madril voluntarily submitted to FINRA's authority and jurisdiction. Mr. Madril expressly submitted to FINRA's jurisdiction and authority when he signed FINRA's Submission Agreement, which specifically states that "[t]he undersigned parties (parties') hereby submit the present matter in controversy…to arbitration in accordance with the FINRA By-laws, Rules, and Code of Arbitration Procedure." (Doc 31-3, Ex. 5 at 2). Additionally, Mr. Madril implicitly submitted to FINRA's jurisdiction and authority when he filed his counterclaim and participated in arbitration by engaging in discovery and presenting evidence at the arbitration hearing. Moreover, Mr. Madril failed at any time during the arbitration proceeding to raise any objection to FINRA's jurisdiction and authority. Rather, Mr. Madril freely accepted the

arbitrators' authority to decide the dispute and, indeed, submitted his own counterclaim for resolution. Only after the arbitrators' decision displeased Mr. Madril did Mr. Madril claim that FINRA had neither jurisdiction nor authority to hear the matters. Thus, like in *Daniel,* Mr. Madril cannot suddenly change his mind and assert lack of jurisdiction and authority.

Furthermore, the fact that the arbitration clauses contained in the Offer Summary and Promissory Note do not specify FINRA as the arbitration forum is insignificant. *See e.g. Lewis v. UBS Fin. Servs. Inc.,* 818 F. Supp. 2d 1161, 1165-66 (N.D. Cal 2011)(holding that courts can compel arbitration before FINRA where an arbitration agreement specifies that arbitration will occur under the rules of NASD). In *Lewis*, the court compelled arbitration before FINRA even though the arbitration clause in the promissory note specified NASD and NYSE as the appropriate forums. *Id.* The court reasoned that when NASD and NYSE consolidated, FINRA merely became the successor entity, expanding NASD by taking over NYSE's regulatory and enforcement functions. *Id.* Thus, the court concluded that the fact that FINRA was not expressly referenced in the arbitration clause in the promissory note was of little importance. *Id.*

In sum, Mr. Madril cannot claim that FINRA had neither the authority nor the jurisdiction to hear the matter after he voluntarily participated in arbitration before FINRA. Additionally, even if Mr. Madril had objected to FINRA's authority earlier, Mr. Madril would still be compelled to arbitrate before FIRNA because the mere fact that the arbitration clauses contained in the Offer Summary and Promissory Note specify NASD as the arbitration forum instead of FINRA is insignificant since NASD and NYSE consolidated to create FINRA. Accordingly, the undersigned recommends Mr. Madril's claim that FINRA exceed its power and authority should be denied.

2. *Denial of Motion to Continue*

Mr. Madril also asserts that the arbitration award should be vacated under 9 U.S.C. § 10(a)(3) because the arbitrators were guilty of misconduct in refusing to postpone the arbitration hearing. (Doc. 21 at 11). Mr. Madril argues that he requested the continuance because he needed additional time to review the hundreds of pages of disclosure provided

to him in the two weeks leading up to the arbitration hearing and prepare subpoenas for witnesses. (Doc. 21 at 13). At oral arguments, Mr. Madril further clarified that had he been granted the continuance, he would have been able to better show that Wachovia (now Wells Fargo) misled him from the very beginning and he would have been able to glean additional information about areas he had not considered and request additional information based on what the documents revealed. (Doc. 36 at 21-24).

"A party to an arbitration proceeding is not entitled to a postponement merely by requesting one." *Fordjour v. Washington Mutual Bank*. 2010 WL 2529093, *5 (N.D. Cal. June 18, 2010). Arbitrators are "provided with broad discretion and great deference in their determinations of procedural adjournment requests." *Id*. at *2. However, an "arbitrary denial of a reasonable request for a postponement [] may serve as a ground for vacating the award." *Cypress Equipment Fund, Ltd. v. Royal Equipment, Inc.*, 1997 WL 106137, * 12 (N.D. Cal. Jan. 13, 1997). Further, "if the failure of an arbitrator to grant a postponement or adjournment results in the foreclosure of the presentation of pertinent and material evidence, it is an abuse of discretion." *Naing Intern. Enterprises, Ltd. v. Ellsworth Associates, Inc.,* 961 F.Supp. 1, * 3 (D. Columbia 1997) (internal quotations and citations omitted).

> In evaluating an arbitrator's decision to deny a postponement, courts consider whether there existed a reasonable basis for the arbitrator's decision and whether the denial created a 'fundamentally unfair' proceeding. Thus, if there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, a court should be reluctant to interfere with the award. Stated another way, as long as there is at least a barely colorable justification for the arbitrators' decision not to grant an adjournment, the arbitration award should be enforced.

*Congressional Securities, Inc.*, 2003 WL 21664678 at *2 (internal quotations and citations omitted).

"To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing."

*Baringa v. Cox*, 2007 WL 184687, \*6 (D. Oregon Jan. 12, 2007). Further, "a party moving to vacate an award for failure to postpone under § 10(a)(3) has the burden of showing it suffered prejudice from the arbitration panel's refusal to delay proceedings, and that the panel's refusal to postpone the hearing had no reasonable basis." *Oxford Health Plans, Inc. v. Sagebrush Solutions, LLC.*, 2009 WL 881903, \*2 (N.D. Texas April 1, 2009) (concluding that, absent an explanation from the defendant as to how it would have presented its case differently or how the continuance may have altered the outcome of the arbitration, the defendant was not deprived of a fair hearing).

Here, the record supports several reasons as to why the arbitrators may have denied Mr. Madril's requested continuance. First, despite Mr. Madril's claim to the contrary, the arbitrators may have concluded that Mr. Madril received Wells Fargo's initial disclosure based on Ms. Candela's declaration and the Federal Express printout that Wells Fargo submitted. Second, the arbitrators may have concluded that delay was inappropriate given the considerable time, effort and money expended based on the set hearing dates. Specifically, in the two weeks prior to the hearing, Mr. Woods expended many billable hours to provide Mr. Madril the disclosure in time for the arbitration hearing. (Doc. 31-4, Ex. 15 at 20). Acknowledging the considerable time and money spent on dealing with the discovery dispute, one of the arbitrators explicitly stated that "the ideal situation [would be] to get this matter resolved…." (Doc 31-4, Ex. 15 at 21). Third, each party presented their arguments at length regarding a continuance at the start of the arbitration hearing, and the panel may have concluded that, despite Mr. Madril's claims to the contrary, Wells Fargo did not in fact dump a massive amount of documents on Mr. Madril at the last minute, but rather Wells Fargo provided disclosure on a rolling basis and worked with Mr. Madril to provide him the requested documents even though it was well beyond the discovery deadline. (*See* Doc. 21-1, Ex. 33 [Day 1 Hearing Transcript]). Further, while Mr. Madril claimed that he was inundated with thousands of pages of disclosure, Wells Fargo clarified that some of the documents that were produced were merely duplicates of documents that had already been disclosed previously, but were disclosed a second time in the three weeks prior to the hearing to correct the bates

numbers or to add exhibit numbers. (Doc. 36 at 48-49). In sum, "[i]n reviewing an arbitrator's refusal to delay a hearing, [the Court] must decide whether there was any reasonable basis for failing to postpone the hearing," and the undersigned finds there are several reasonable bases in support of the arbitrators' denial here. *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006) (*quoting Scott v. Prudential Sec.*, 141 F.3d 1007, 1016 (11th Cir.1998) ((internal quotation marks omitted)).

At the oral arguments held on April 14, 2015, Mr. Madril's attorney argued that the arbitration panel should have granted Mr. Madril's request for a continuance because Wells Fargo inundated Mr. Madril with information in the two weeks prior to the evidentiary hearing and, given the timing of disclosure, there was no way Mr. Madril could have sifted through all the information to obtain what he needed. (Doc. 36 at 61). However, the record reveals that Mr. Madril effectively brought this situation on himself and the volume of the alleged belated document production has been exaggerated. For example, Wells Fargo notes that Mr. Madril could have requested disclosure as early as February 18, 2013, yet he did not submit his first disclosure request until June 7, 2013. (Doc. 36 at 34). Wells Fargo further noted that although Mr. Madril claimed he did not receive the CD on August 28, he made no efforts to follow up or meet and confer regarding the missing documents until he filed his motion to compel documents on October 2. *Id.* at 35-36. Mr. Madril also failed to respond to Wells Fargo's numerous offers to meet and confer to discuss the discovery issues. *Id.* at 37-38, 41. When Wells Fargo met with Mr. Madril to inform him that the compliance manuals were available, Mr. Madril refused to go through them and instead Wells Fargo's counsel identified which pages of the manuals might be relevant to Mr. Madril's discovery requests and produced those pages the very next day. *Id.* at 40. Wells Fargo specifically noted that it did considerably more work than it was required to do in producing the documents because Mr. Madril was proceeding pro se, and that had Mr. Madril been represented by counsel, it would have been incumbent on Mr. Madril's attorney to sift through the disclosure and identify what documents were missing. *Id.* at 41, 44-45. Further, as noted above, Wells Fargo clarified that many of the documents that were produced in the weeks

prior to the arbitration had already been disclosed previously, but were disclosed a second time to correct the bates numbers or to add exhibit numbers. *Id*. at 48-49.

Moreover, Mr. Madril failed to establish how the arbitration panel's failure to grant a continuance prejudiced him. In both his brief and at oral arguments, Mr. Madril was unable to identify what specific information contained in the later disclosure would have caused him to present his case differently. Instead, Mr. Madril vaguely asserted that had he been granted the continuance, he would have been able to better show that Wells Fargo mislead him from the very beginning and he would have been able to glean additional information about areas he had not considered. (Doc. 36 at 23).

Given the disclosure produced in the weeks prior to the arbitration hearing, the Court asked Mr. Madril what documents he could point to that could have been used at the hearing which prejudiced his case. In response to the Court's inquiry, Mr. Madril's attorney, Richard Madril, could not identify a specific document. Rather, Richard Madril made a number of claims that Wells Fargo then refuted.[11] For example, Richard Madril stated that Mr. Madril could have presented how the Wells Fargo recruiters "were actually receiving these bonuses and incentives for hiring financial advisors, which was their motive for lying." (Doc. 36 at 22). Yet Wells Fargo's counsel noted that during the arbitration hearing, Mr. Madril elicited testimony from both Dan Lind and Shannon Smith about the recruiting bonuses. *Id*. at 45.

Second, Mr. Madril claimed he did not have his income information, (Doc. 36 at 22), yet Wells Fargo stated Mr. Madril did receive his payroll information in the initial 479 pages of documents that were produced. *Id*. at 45.

Third, Richard Madril stated that "Ms. Bell probably—we probably could have gotten more information out of her by reminding her of a lot of the things that occurred to her because she was going strictly by memory." (Doc. 36 at 22). However, Wells Fargo noted that Ms. Bell "testified at length, and she testified about a number of things [and

---

[11] Mr. Madril presented these same arguments to the arbitration panel and Wells Fargo presented its same counterarguments during the arbitration hearing. (*See* Doc. 21-1, Ex. 33 [Day 1 Hearing Transcript]).

t]here were no time restraints on how much she could have testified." *Id*. at 45.

Fourth, Mr. Madril claimed that he requested "the correspondence between himself and Mr. Smith, himself and Dan Lind. We never even got that correspondence." (Doc. 36 at 22-23). In contrast, Wells Fargo claims that it did disclose this information, but that Mr. Madril did not use the emails during the hearing because, in Wells Fargo's opinion, there were not any emails supportive of Mr. Madril's claims. *Id*. at 28, 39. Further, Wells Fargo also persuaded both Dan Lind and Shannon Smith to testify on Mr. Madril's behalf at the arbitration hearing. *Id*. at 44.

Fifth, Richard Madril claimed that "[w]e asked for information on the breakdown of how the races were involved in this. We never got any information on that." (Doc. 36 at 23). However, Mr. Woods indicated that Mr. Madril did not request this information until after the discovery deadline had passed. *Id*. at 46. Further, Mr. Madril did question Mr. Lind about the hiring of minority employees during the arbitration hearing. *Id*.

Sixth, Richard Madril stated "I don't think we even got information on the matrix," (Doc. 36 at 23), yet Wells Fargo asserts it did disclose the recruiting matrix even though Mr. Madril had not signed the confidentiality agreement. *Id*. at 45, 49.

Finally, Richard Madril indicated that "[a] lot of stuff we could have provided to the panel would have been facts and figures. We could have been able to provide the witnesses that would have verified Mr. Madril's story." (Doc. 36 at 24). However, Richard Madril did not identify any specific facts and figures that Mr. Madril either received late, or allegedly requested but did not receive, which would have potentially helped his case.

Thus, even upon further inquiry by the Court, Mr. Madril was unable to identify any specific information contained in the later disclosure that would have affected how he presented his case at the arbitration hearing. Instead, Mr. Madril's argument shifted from receiving late disclosure to never receiving requested disclosure, (Doc. 36 at 61-63), yet he was unable to pinpoint any documents that were missing or how the missing or late-disclosed documents prejudiced his case before the arbitrators. Without more, it is not evident that the arbitrators' failure to grant Mr. Madril's request for a continuance

actually prejudiced Mr. Madril. Thus, the undersigned recommends Mr. Madril's claim pursuant to 9 U.S.C. § 10(a)(3) should be denied because the arbitration panel had a reasonable basis to deny the continuance and because Mr. Madril has failed to show prejudice from the denial of a continuance.

### 3. Concern for Personal Schedules

Mr. Madril additionally asserts that the arbitration award should be vacated because the arbitrators were allegedly more concerned about their personal schedules than administering a fair hearing. (Doc. 21 at 16). This argument is related to the issue regarding the denial of the continuance.

An arbitration award may be vacated "where the arbitrators were guilty ... of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). A showing of prejudice is a prerequisite for vacatur. *See Employers Ins. v. Nat'l Union*, 933 F.2d 1481 (9th Cir. 1991) (vacatur inappropriate where party failed to show prejudice from ex parte contacts).

Mr. Madril claims that the arbitrators misbehaved because they were allegedly more concerned about their personal schedules. However, Mr. Madril has failed to prove how the arbitrators' alleged overarching concern for their schedules prejudiced him. Nothing in the record indicates that the arbitrators rushed Mr. Madril during the presentation of his case. (Doc. 26 at 18). Rather, the arbitrators gave Mr. Madril ample time to make opening statements, present evidence and make closing arguments. The arbitration hearing was scheduled for three full days. Had Mr. Madril used all three days to present his case-in-chief and requested more time, Mr. Madril's assertion regarding the arbitrators' alleged concern may have been more compelling. However, Mr. Madril completed his case-in-chief prior to the lunch break on the third day, leaving half a day for Wells Fargo to present its rebuttal evidence and make closing arguments. If anyone was impacted by the arbitrators' alleged concerns for their schedule it would have been Wells Fargo, not Mr. Madril. Because Mr. Madril has failed to demonstrate that the arbitrators' alleged concerns for their schedules prejudiced him, the undersigned recommends that Mr. Madril's claim on this issue should be denied.

**B. PETITION TO CONFIRM**

As previously noted, unless an arbitration award is vacated, a court must confirm the arbitration award if: (1) the parties, in their agreement, have agreed that a judgment of the court can be entered upon the arbitration award; (2) the parties have specified the court that may enter judgment thereon; and (3) one of the parties applies for an order confirming the award within one year after the award is made. 9 U.S.C. §9; *Schoenduve Corp. v. Lucent Technologies. Inc.*, 442 F.3d 727, 731 (9th Cir. 2006); *see also Kyocera Corp. v. Prudential–Bache Trade Services, Inc.*, 341 F.3d 987 (9th Cir. 2003).

Mr. Madril and Wells Fargo agreed in both the Offer Summary and the Promissory Note that a court of competent jurisdiction could enter judgment upon the arbitration award. On October 6, 2014, nine months after the arbitration award was issued, Wells Fargo timely petitioned to this Court to confirm the arbitration award. Moreover, as previously discussed, Mr. Madril has failed to establish that the arbitration award should be vacated pursuant to 9 U.S.C. § 10. Thus, the undersigned recommends that the Court grant Wells Fargo's Petition to Confirm Arbitration Award and Enter Judgment Thereon.

**C. ATTORNEY'S FEES**

Wells Fargo requests attorney's fees pursuant to A.R.S. §12-341.01(A). "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." A.R.S. §12-341.01(A).

The undersigned recommends that if Wells Fargo is the prevailing party on the motion to vacate, it would likely be entitled to attorney's fees. However, the issue of attorney's fees is not properly before the Court at this time. Once the District Judge enters his order on this Report and Recommendation, and if Wells Fargo is the prevailing party, then Wells Fargo may file its motion for attorney's fees.

**IV. RECOMMENDATION**

In conclusion, the Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion to Vacate the Arbitrator's Award or Modify the Decision (Doc.

1 | 21) and **GRANT** Defendant's Petition to Confirm Arbitration Award and Enter Judgment
2 | Thereon (Doc. 22).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. *See id*. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

If objections are filed, the parties should use the following case number: **CV 14-01566-TUC-RCC.**

**Dated this 18th day of May, 2015.**

_____
Eric J. Markovich
United States Magistrate Judge